## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRENDA BAINES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-cv-1280-RGA-MPT |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commission of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Presently before the court are plaintiff's motion for summary judgment[1] and

defendant's cross motion for summary judgment.[2]  Plaintiff seeks an award of benefits

in her favor or, alternatively, a reversal and remand for further review.[3]  For the following

reasons, it is recommended that plaintiff's motion for summary judgment be GRANTED,

and that defendant's motion for summary judgment be DENIED.

### I.    BACKGROUND

This action arises from the denial of Brenda Baines's ("plaintiff") claim for Social

Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act

(the "Act").[4]  Plaintiff protectively filed her benefits application for SSDI on June 3,

2016.[5]  She alleged disability beginning January 4, 2011[6] due to the following

---

[1] D.I. 16.

[2] D.I. 18.

[3] Briefing on the motions are found at D.I. 17 (plaintiff's opening brief); D.I. 19 (defendant's combined opening/answering brief); and D.I. 21 (plaintiff's combined answering/reply brief).

[4] The court refers to the record from the administrative proceeding (D.I. 12) as "Tr."  The record is consecutively paginated and is referred to as "Tr. at ___."

[5] Tr. at 20.

[6] *Id.* at 20, 256-262.

conditions: knee replacement, left hand carpal tunnel, bipolar disorder, schizophrenia, depression, anxiety, insomnia, hypertension, diabetes, glaucoma, diabetic retinopathy, macular degeneration, cataracts, and migraines.[7] Her claim was denied initially on September 8, 2016, and upon reconsideration on January 11, 2017.[8] Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ").[9]

The ALJ held a hearing on February 25, 2019, at which he heard testimony from plaintiff, plaintiff's husband, and a vocational expert ("VE").[10] The ALJ issued a decision on March 13, 2019, concluding plaintiff was not under a disability within the meaning of the Act for the relevant period and denied her claim for SSDI.[11] The ALJ found that, while plaintiff could not perform her past work, she could perform a limited range of light work available in the national economy.[12]

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review the decision, making it a final decision reviewable by this court.[13] Plaintiff filed this action on September 23, 2020.[14]

## II.    LEGAL STANDARDS

The Commissioner must follow a five-step sequential analysis when determining if an individual is disabled.[15] The Commissioner must determine whether the applicant:

---

[7] *Id.* at 289, 382.

[8] *Id.* at 141-46, 148-53.

[9] *Id.* at 154-55.

[10] *Id.* at 65-103. At the hearing, plaintiff, through her attorney of record, amended the alleged onset date to August 1, 2012. *Id.* at 68.

[11] *Id.* at 20-30.

[12] *Id.* at 24-28.

[13] *Id.* at 1-6.

[14] D.I. 2.

[15] 20 C.F.R. § 404.1520.

(1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that meets a listing; (4) has the residual functional capacity ("RFC") to perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy.[16]

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence."[17] "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose [its] own factual determinations."[19] The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision.[20]

The reviewing court must also review the ALJ's decision to determine whether the correct legal standards were applied.[21] The court's review of legal issues is plenary.[22]

## III. DISCUSSION

The ALJ found plaintiff had the following severe impairments: lumbar degenerative disc disease, status post left knee replacement, obesity, schizoaffective

---

[16] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).
[17] 42 U.S.C. § 405(g).
[18] *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988).
[19] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).
[20] *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).
[21] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).
[22] *Id.*

3

disorder, and depression.[23]  The ALJ also determined that plaintiff's hypertension,

headaches, diabetes mellitus, and glaucoma were not "severe" impairments as defined

in the regulations.[24]

The ALJ posed the following hypothetical question to the VE:

[A]ssume an individual claimant's age, education, and work history, who
can perform work at the light exertional level; who can occasionally climb
ramps and stairs but never ladders, ropes and scaffolds; who can
occasionally balance, stoop, kneel, crouch, and crawl; who can have
occasional exposure to extreme cold, vibration, and hazards, and who
could perform simple, unskilled tasks with no fast-pace or strict production
requirements, and occasional interaction with the public.  Could this
person perform the claimant' s past work?[25]

The VE responded the hypothetical person could not.[26]  The ALJ then asked if

there would be any jobs that person could perform.[27]  The VE responded such person

would able to perform jobs at the light exertional levels including:  sorter, general office

helper, and inspector.[28]

Plaintiff's counsel then posed a question to the VE regarding what effect

absences of two or more days per month due to interference from symptoms would

have on the hypothetical claimant's jobs.[29]  The VE answered "[i]f an individual is

consistently missing two or more days of work per month, over time, they will not

maintain employment."[30]

---

[23] Tr. at 22.
[24] *Id.* at 23.
[25] *Id.* at 99-100.
[26] *Id.* at 100.
[27] *Id.*
[28] *Id.*
[29] *Id.* at 102.
[30] *Id.*

4

In his decision, the ALJ stated:

After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl. She could occasionally be exposed to extreme cold, vibrations, and hazards. She could perform simple, unskilled tasks, not at a fast pace or with strict production requirements. She could have occasional interaction with the public.[31]

\* \* \* \* \*

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[32]

The ALJ concluded, considering plaintiff's age, education, work experience, and

RFC, she was capable of making a successful adjustment to other work that existed in

significant numbers in the national economy, such as sorter, inspector, and general

office helper.[33]

Plaintiff argues the hypothetical question posed to the VE did not

comprehensively describe all of her credibly established impairments.[34] She maintains

the ALJ's RFC assessment was therefore flawed because he did not consider all of the

impairments and symptoms that caused her inability to sustain work.[35]

_____

[31] *Id.* at 24-25.

[32] *Id.* at 25.

[33] *Id.* at 30. The ALJ relied upon the VE's testimony in making his RFC determination. *Id.*

[34] D.I. 17 at 1.

[35] *Id.*

5

Plaintiff also argues substantial evidence does not support the ALJ's conclusion that she has the capacity to perform light work given medical evidence the ALJ did not consider.[36]

Defendant asserts substantial evidence supports the ALJ's RFC assessment because he considered and discussed the evidence relevant to plaintiff's physical impairments prior to the expiration of her date last insured.[37]  Defendant notes the ALJ was not required to address every piece of evidence in the record in determining plaintiff's RFC.[38]

Defendant also contends substantial evidence supports the RFC assessment, because the ALJ ultimately found that plaintiff was capable of a reduced range of light exertional work, where he relied in part on the findings of the state agency physicians who reviewed the record prior to her date last insured and found she could stand and/or walk for six hours and lift twenty pounds occasionally.[39]

A plaintiff's RFC is her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[40]  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or another similar schedule.[41]  The RFC assessment must include a discussion of the individual's abilities.[42]  "[T]he ALJ's finding of [RFC] must be

---

[36] *Id.*

[37] D.I. 19 at 1 (citing 20 C.F.R. § 404.1545).

[38] *Id.* (citing *Robinson v. Colvin*, 137 F. Supp. 3d 630, 645 (D. Del. 2015)).

[39] *Id.* at 2 (citing 20 C.F.R. §§ 404.1546(c), 404.1545(a)).

[40] *See Social Security Ruling* ("SSR") 96-8p.

[41] *Id.*

[42] *Id.*; 20 C.F.R. §§ 404.1545, 416.945; *Hartranft*, 181 F.3d at 359 n.1.

accompanied by a clear and satisfactory explanation of the basis on which it rests."[43]

"The record before the ALJ is the touchstone for determining which limitations should be included in an RFC assessment."[44] "A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC."[45] The ALJ must consider all the evidence before him when making his RFC determination and must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.[46]

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."[47] An ALJ does not have to include every alleged impairment, but only "a claimant's credibly established limitations."[48] "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason."[49] The ALJ's decision must be accompanied by a clear and satisfactory explanation of the basis on which it rests for this court properly to decide whether the ALJ's decision is based upon substantial evidence.[50]

If a credibly-established limitation is not included within the hypothetical question,

---

[43] *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).

[44] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007).

[45] *Id.*

[46] *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

[47] *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

[48] *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

[49] *Id.* (internal quotation marks omitted).

[50] *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

analysis of particular evidence.[59]

As to plaintiff's right knee, although not discussed with specificity in his decision, the ALJ limited plaintiff to light work with additional postural and environmental limitations to accommodate symptoms such as pain, reduced range of motion, and decreased strength, along with the effect obesity had upon those symptoms.[60]  The ALJ found these symptoms arise from plaintiff's lumbar degenerative disc disease and her left knee replacement.[61]  The ALJ discussed plaintiff's progress after her left knee replacement, specifying plaintiff used a cane at the beginning of her physical therapy, but later was able to walk without her cane and resume walking up and down stairs.[62]  The ALJ also cited plaintiff's hearing testimony in which she testified she now uses a cane on a daily basis.[63]  Plaintiff argues if the ALJ chose to reject the evidence of an impairment, he was required to provide a clear explanation on his reasoning for doing so.[64]

There is no indication the ALJ explicitly rejected evidence of plaintiff's right knee pain or ignored the treatment notes.[65]  In fact, the ALJ referenced treatment notes

[59] *Phillips v. Barnhart*, 91 F. App'x 775, 280 n.7 (3d Cir. 2004).
[60] Tr. at 27.
[61] *Id.*
[62] *Id.* at 712, 718, 726, 757.
[63] *Id.* at 27.
[64] D.I. 21 at 3.
[65] Moreover, the emphasis regarding plaintiff's knees was consistently on the left. For example, at the hearing, her counsel's preliminary statement specified bilateral knee pain as an impairment, yet there was no reference to same during plaintiff's testimony, only to her left. Tr. at 68. When asked about the pain in her low back, plaintiff responded, "[y]es, low back and left leg" and stated it went "down to my knee." *Id.* at 74-75. She also testified that the pain in her lower back and radiating pain in her left leg interfere with her sleep. *Id.* at 81-82. When asked where pain was located after she had been sitting and needed to get up and move around to alleviate pain, she

9

which documented plaintiff's right knee pain and evidence of "bilateral knee OA," although the notes indicate plaintiff's left knee as the primary contributing factor.[66]  The Third Circuit has not required the ALJ to discuss or refer to every piece of evidence on the record, so long as the reviewing court can discern the basis of the decision.[67]  The court is able to discern that basis.

Next, plaintiff contends the ALJ erred by disregarding significant portions of Dr. Fucci's October 2014 treatment notes related to her lower back pain which recorded medications and trigger injections for pain relief.[68]  The ALJ's decision specifically noted injections "in order to combat the back pain,"[69] and referenced her medical provider's October 2014 observation of a "reduced range of motion in the low back," with no swelling, tenderness or deformity.[70]  He also noted that at the end of the adjudication period, plaintiff had a normal gait.[71]  Thus, the court finds the ALJ properly considered plaintiff's ongoing back pain.

Plaintiff argues the ALJ failed to address her history of orthostatic intolerance which she claims affects her ability to walk and stand for prolonged periods of time.[72]

Defendant notes plaintiff underwent the test for orthostatic intolerance more than three years prior to her amended alleged onset date, and has not shown she was

_____

stated, "[i]n my lower back and left leg." *Id.* at 85.  The court notes her disability claim listed "knee replacement" and did not refer to right knee as a basis for her claim. *Id.* at 105, 121, 289.

[66] *Id.* at 26 (citing *id.* at 667-68).
[67] *See Robinson*, 137 F. Supp. 3d at 645.
[68] D.I. 17 at 11.
[69] Tr. at 26.
[70] *Id.*
[71] *Id.*
[72] D.I. 17 at 12.

10

treated for this condition during the relevant period, or that it led to any functional limitations during that period.[73] Defendant maintains "Dr. Alfieri reproduced the 2009 tilt test findings and recommendations in his later treatment notes and noted his diagnosis in her '*history[,]*'" but plaintiff does not show treatment or any functional limitations related to this condition during the period at issue.[74] Defendant further argues plaintiff's mere reference to her *diagnosis* is insufficient to set aside the ALJ's decision.[75] In response, plaintiff cites her treating physician's advice that she avoid sudden movements from 2012 to 2014.[76] She claims orthostatic intolerance "affected her ability to move suddenly and was not a mere diagnosis."[77] Although not specifically tied to her orthostatic intolerance, the ALJ's RFC accommodates such a limitation in finding plaintiff could "perform simple, unskilled tasks, *not at a fast pace or with strict production requirements.*"[78]

Plaintiff further argues the ALJ did not address her fatigue from her obesity diagnosis.[79] The ALJ did address this limitation when he found "obesity may have an adverse impact upon co-existing impairments. These considerations have been taken into account in reaching the conclusions herein."[80] He limited plaintiff to light work with

---

[73] D.I. 19 at 14-15 (citing Tr. at 498-500, 501, 548, 554, 559, 566).

[74] *Id.* (emphasis added) (citing Tr. 502, 547, 553, 558, 565).

[75] *Id.* at 15 (citing *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (mere diagnosis is insufficient to show that a condition results in functional limitations); *Phillips*, 91 F. App'x at 780 ("A diagnosis of an impairment, by itself, does not establish entitlement to benefits . . . a claimant must show that the impairment resulted in disabling limitations")).

[76] D.I. 21 at 5 (citing D.I. 17 at 12).

[77] *Id.* at 5.

[78] Tr. at 24-25 (emphasis added).

[79] D.I. 17 at 12.

[80] Tr. at 26.

11

further restrictions to accommodate symptoms arising from some of her impairments, including "the effect obesity may have upon these symptoms."[81] Further, the ALJ cited Dr. Alfieri's treatment notes which addressed plaintiff's obesity.[82] Two of Dr. Alfieri's notes describe "[a]ssociated symptoms characterized by *fatigue* and weight gain."[83] Thus, the court finds the ALJ considered the combined effects of obesity, including fatigue, on plaintiff's impairments and the symptoms.

Plaintiff next contends the ALJ was required to consider the combined effects of her impairments and treatment on her ability to perform daily work.[84] She specifically faults the ALJ's failure to address her ability to sustain regular and continuing work activity given her numerous medical and physical therapy appointments, and relies on the VE's opinion that two absences per month due to health issues would not permit employment.[85]

Plaintiff cites the Third Circuit's *Kangas v. Bowen* opinion which remanded for further proceedings where "the ALJ and the Secretary failed to evaluate the effect of [the claimant's] frequent hospitalizations on his ability to perform any work on a regular, continuing or sustained basis, a critical factor."[86] Plaintiff also relies on this court's recent decision in *Todd v. Berryhill*.[87] There, the court determined the ALJ's finding of

---

[81] *Id.* at 27.

[82] *Id.* at 26 (citing *id.* at 486, 538, 559).

[83] *Id.* at 486, 538 (emphasis added).

[84] D.I. 17 at 13 (citing 20 C.F.R. §§ 404.1522 (requiring consideration of the combined effects of all concurrent impairments); *Todd v. Berryhill*, No. 1:18-cv-00415-RGA, 2019 WL 1995494 (D. Del. May 6, 2019) (remanding due to failure to consider the inability to sustain work)) .

[85] *Id.* (citing Tr. at 102).

[86] D.I. 21 at 6 (citing *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987)).

[87] *Id.* (citing *Todd*, 2019 WL 1995494).

no disability was legally insufficient due to the failure to address evidence of the
plaintiff's disability-related absences, or the vocational expert's testimony on the impact
of the absences.[88]

Here, plaintiff argues the record documents her history of numerous medical
appointments, physical therapy sessions, and surgery.[89]  The court finds the ALJ did not
address the "critical factor" of the impact that potential continued appointments and
treatment could have on plaintiff's ability to sustain employment, or the VE's testimony
regarding that ability.  Because this failure "'renders meaningful judicial review of his
determination [of no disability] impossible[,]'"[90] the court recommends the matter be
remanded for consideration of plaintiff's ability to sustain regular and continuing work
activity.[91]

Lastly, plaintiff argues a residual functional capacity for light work is not based

---

[88] *Todd*, 2019 WL 1995494, at *2 (citing *Kangas*, 712 F.2d at 778; *Ashe v.
Berryhill*, C.A. No. 16-956 (MN), 2019 WL 1430243, at *11 (D. Del. Mar. 29, 2019)
(finding the ALJ's failure to consider evidence of work-preclusive absenteeism
"render[ed] meaningful judicial review of his determination impossible" and remanding
for additional proceedings on the issue)).

[89] D.I. 17 at 13.

[90] *Ashe*, 2019 WL 1430243, at *11(quoting Lawrence v. Astrue, No. 08-265J,
2010 WL 545880, at *4 (W.D. Pa. Feb. 16, 2010)).

[91] Defendant contends "medical appointments are not an 'appropriate
consideration for assessing [a claimant's] [RFC] because that determination considers
only the functional limitations and restrictions resulting from medically determinable
impairments.'" D.I. 19 at 16 (citing *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902,
904 (11th Cir. 2017)).  Defendant argues the number of a claimant's medical
appointments is not a functional limitation caused by an impairment. *Id.*  Despite the
Eleventh Circuit's comment on this issue, this court has made clear that "in addition to
physical and mental limitations, the ALJ *must consider* the frequency of a claimant's
impairment-related hospitalizations and medical appointments when determining
whether the claimant is disabled." *Todd*, 2019 WL 1995494, at *2 (emphasis added)
(citing *Kangas*, 823 F.2d at 778). Here, the ALJ failed to do so.

13

upon substantial record evidence,[92] in particular, her ability to stand or walk six hours of an eight hour workday.[93]  She contends the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explanation of the basis on which it rests."[94]  Plaintiff asserts substantial record supports she is limited to "less than full range sedentary work or sedentary work at best," and that the ALJ failed to explain why he "discounted numerous medical records and findings."[95]

Defendant argues the ALJ fully articulated his rationale and cites his discussion of the state agency physicians' findings.[96]  The ALJ assigned "significant weight" to the opinions of DDS medical consultants Drs. Campo and Cobbs.[97]  He notes Dr. Campo opined the "claimant could stand and/or walk about 6 hours in an 8-hour workday and sit for a total of about 6 hours in an 8-hour workday."[98]  Dr. Cobbs affirmed the limitations set forth by Dr. Campo.[99]  The ALJ explained he gave great weight to these opinions because they were "consistent with the examinations of the claimant."[100]  Based on the ALJ's assessment of the pertinent evidence, the court finds his RFC determination was accompanied by a "clear and satisfactory explanation of the basis on which it rests."[101]

---

[92] D.I. 17 at 13.
[93] *Id.*
[94] *Cotter*, 642 F.2d at 704.
[95] D.I. 17 at 14.
[96] D.I. 19 at 17.
[97] Tr. at 27.
[98] *Id.* (citing [C]1A/9, [Tr. at 113]).
[99] *Id.* at 28.
[100] *Id.*
[101] *Cotter*, 642 F2d. at 704.

14

## IV.    RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that:

1. Plaintiff's motion (D.I. 16) be **GRANTED**, and this case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings to address evidence of the plaintiff's disability-related history of appointments and any future related appointments possible impact on sustaining employment.

2. Defendant's motion (D.I. at 18) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days from the date of this Recommendation and limited to ten (10) pages. Any response shall be limited to ten (10) pages and filed within fourteen (14) days thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.).

February 3, 2022                           /s/ Mary Pat Thynge
                                  CHIEF U.S. MAGISTRATE JUDGE